<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BENIGNO GONZALEZ ROMAN, | Case No.:  2:17-cv-7057 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| NANCY A. BERRYHILL,<br>Acting Commissioner<br>of Social Security, | |
| Defendant. | |

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
PO BOX 1798
RAHWAY, N.J.  07065
        On behalf of Plaintiff

HEATHER TASHMAN FRITTS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, P.A.  19123
        On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Benigno Gonzalez Roman

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C.

§§ 401, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ")

denying the application; Defendant, the Commissioner of Social Security ("the Commissioner"),

opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court affirms the Commissioner's decision that Plaintiff was not disabled.

# I.    PROCEDURAL HISTORY

On May 31, 2013, Plaintiff filed an application for DIB alleging a disability onset date of May 1, 2011.  (R. 259-60.)[2]  On September 25, 2013, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 85.)  Plaintiff filed for reconsideration, and on March 28, 2014, the application was again denied.  (R. 109.)  On February 26, 2016, an Administrative Law Judge held a hearing on Plaintiff's application; Plaintiff was represented by counsel at the hearing.  (R. 45-84.)  On April 11, 2016, the ALJ issued a decision denying Plaintiff's application.  (R. 22-44.)  On July 18, 2017, the Appeals Council denied Plaintiff's request for review, thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  (R. 1-8.)  On September 13, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  ECF No. 1.  On April 29, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28

---

[1] In March 2018, the U.S. Government Accountability Office informed the President of its determination that Nancy A. Berryhill had exceeded the time limit under the Federal Vacancies Reform Act of 1998 allowing her to serve as the Acting Commissioner of the Social Security Administration without the nomination of a successor.  Accordingly, Ms. Berryhill stepped down as Acting Commissioner and continued to lead the agency from her title of record as Deputy Commissioner for Operations.  In April 2018, Ms. Berryhill resumed her role as Acting Commissioner.  *Patterson v. Berryhill*, No. 18-cv-193(DWA), 2018 U.S. Dist. LEXIS 99486 (W.D. Pa. Jun. 14, 2018); *see* 5 U.S.C. § 3346(a)(2).

[2] "R." refers to the continuous pagination of the administrative record on appeal.  ECF No. 5.

U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] The case was reassigned to the undersigned Magistrate Judge on December 24, 2018. ECF No. 14.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

4

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000));

*see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of

the evidence s/he considered which supports the result, but also some indication of the evidence

which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ

may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which

[s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186

F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation

for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."

*Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative

evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Standard for Awarding Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory

---

[4] Disability Insurance Benefits (*see* 42 U.S.C. §§ 401, et seq.) and Supplemental Security Income (*see* 42 U.S.C. §§ 1381, et seq.) are separate programs under Title II and Title XVI, respectively, of the Social Security Act. Although they are subject to different qualification requirements, the standard for determining whether a claimant is disabled is the same for both programs. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). The Court endeavors to provide citations to the applicable regulations for each program but may provide citations only to the disability insurance benefits regulations. *See Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

diagnostic techniques. Thus, an impairment can be established by objective medical evidence from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id.* §§ 404.1521, 416.921.

The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id.* §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id.* §§ 404.1572(a) & (b), 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

activities. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565,

416.945, 416.960.  If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing postural or manipulative functions such as reaching, stooping, climbing, crawling, crouching, handling, or fingering; difficulty tolerating environmental or physical features of certain work settings such as dust or fumes; or difficulty maintaining concentration or understanding detailed instructions.  *Id*. at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age,

education, and work experience, and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations.  *Id*. §§ 404.1569a(d), 416.969a(d).  If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making.  *Id*. §§ 404.1569a(c), 416.969a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was forty-four years old on the alleged onset date of May 1, 2011.  (R. 37.)  His date last insured was December 31, 2016.  (R. 30.)  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 30.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  left knee meniscal tear, cervical spondylosis, degenerative disc disease, arthritis, and major depression.  (R. 30.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 30-32.)  At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work subject to various non-exertional limitations.  (R. 32-37.)  The ALJ also found at Step Four that Plaintiff was unable to perform his past relevant work as auto dealer, valet parker, and janitor.  (R. 37.)  At Step Five, the ALJ found that a finding of not disabled would be directed by Grid Rule 201.18 if Plaintiff had the RFC to perform the full range of sedentary work.  The ALJ also found at Step Five that at least three jobs – final assembler, lens inserter, and table work fabricator – existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age,

education, work experience, and RFC.  (R. 37-38.)  The ALJ concluded that Plaintiff was not

disabled from the alleged onset date through April 14, 2016 (decision date).  (R. 38.)

Plaintiff attacks the ALJ's decision on several fronts.  Specifically, Plaintiff contends that:

(1) the decision did not properly evaluate Plaintiff's subjective symptoms; (2) the RFC finding

lacked evidentiary support and did not include all of Plaintiff's credibly established limitations;

(3) the past relevant work finding was not supported by substantial evidence; and (4) the

Commissioner did not meet her burden in proving that Plaintiff can perform other work.[6]  Plaintiff

asks the Court to reverse and remand for payment or, alternatively, for a new hearing.[7]  Defendant

contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the

governing legal standards, reflected consideration of the entire record, and was supported by

sufficient explanation and substantial evidence.

---

[6] After noting at the end of his brief that he was also diagnosed by a treating physician with panic disorder and anxiety disorder, Plaintiff asserts for the first time:

> Nothing is done with this information and, beginning at steps 2 and 3, the diagnoses of panic and anxiety disorders are ignored as severe impairments, never discussed as non-severe impairments and not included in a comparison with designated listing 12.06 [Anxiety-related disorders] or combined with the acknowledge psychiatric impairment of major depressive disorder.  None of this is permitted, or susceptible to judicial review.

ECF No. 15 at 31.  The Court finds that any error at Step Two was harmless, because the ALJ found that Plaintiff had other severe impairments.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("if the ALJ found in [the claimant's] favor at Step Two, even if [the ALJ] had erroneously concluded that some of [the claimant's] other impairments were non-severe, any error was harmless").  The Court also finds that any error at Steps Three or Four was harmless, because Plaintiff does not "affirmatively point[] to specific evidence that demonstrates he should succeed."  *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

[7] The "Opening Statement" and "Summary of Argument" sections of Plaintiff's brief request that the Court reverse the ALJ's denial of benefits and remand for payment (ECF No. 15 at 1, 9), but this is merely boilerplate.  Plaintiff repeatedly requests throughout the remainder of his brief that the Court remand for a new hearing.  *See id*. at 14, 36, 40.

IV.     **SUMMARY OF RELEVANT EVIDENCE**

A.     <u>**Non-Medical Evidence.**</u>

On July 30, 2013, Plaintiff submitted a Function Report that was completed in Spanish; the Court cannot locate a translated version in the record. (R. 284-91.) On January 14, 2014, Plaintiff submitted a second Function Report that was completed in English. According to this report, on a typical day, Plaintiff woke up in pain, stretched, had breakfast, got dressed, and spent the rest of the time sitting, walking, and lying down in an effort to find a comfortable spot. He did not sleep more than 3 hours a night because extreme back and knee pain made it difficult for him to get comfortable. The only problems he identified with personal care activities were that he had to dress and bathe slowly and carefully, and that he had a difficult time with his socks and shoes. Sometimes he put off showering for a few days, and his son had to remind him to take his medicine. He prepared simple meals, cereal, soup, and sandwiches daily, and his children prepared bigger meals when they visited. He could not prepare bigger meals because the pots were too heavy, and he could not stand in the kitchen for long periods. He picked up after himself; his children did heavier cleaning and laundry. A landscaper mowed the lawn. He picked up his 13-year old son from school every day. He drove a car and went out alone. He shopped once a week, for less than one hour, for groceries. He watched television, saw his son every day, and saw his daughter three times per week. Extreme pain, spasms, and numbness impacted all physical activity. He could not pay attention for more than 20 minutes and did not finish what he started. He needed to re-read written instructions and needed to have spoken instructions repeated. Stress caused him to get angry, and he was agitated by unexpected changes to his routine. He had not noticed any unusual behaviors or fears. (R. 335-42.)

On February 26, 2016, Plaintiff testified during the hearing in response to questioning from the ALJ. Plaintiff testified in English but had a Spanish interpreter with him. Plaintiff testified that he worked for 19 years at a car dealership in New Jersey doing maintenance and service work on the property. In 2005, he injured his neck, lower back, and left knee in an accident. He subsequently had laser surgery in his lower back and endoscopic surgery twice in his left knee. Plaintiff returned to work within a year but continued to have problems with his lower back and left knee. He worked until 2011, when the business was acquired by a new owner who wanted Plaintiff to do more work than his physical impairments would allow. After he stopped working, Plaintiff moved to Puerto Rico to live with his sister. While there, he received treatment for back pain (from Dr. Javier Rivera Zayas), and he began to see a psychiatrist (Dr. Cesar Padilla) for depression and because he was having panic attacks and hearing voices. Although prescribed psychiatric medication made him feel more relaxed, he continued to have panic attacks and was afraid to go outside because of television news reports about crime. While in Puerto Rico, Plaintiff never left the house except for medical appointments. He would not shower or get dressed unless pressured to do so by his sister. In 2013 or 2014, Plaintiff moved back to New Jersey. His ex-wife, 21-year old daughter, and 15-year old son moved from New Jersey to New York shortly after Plaintiff returned from Puerto Rico. He saw a psychiatrist in New Jersey every two months (as an outpatient at Trinitas Hospital) but still had panic attacks and heard voices. His psychiatric medications made him feel drowsy. Additionally, he had lower back pain that went down his left leg to foot. His left leg always felt numb, and he had back spasms. His left knee also failed on him at least once every month. He went to physical therapy but had difficulty finding a doctor who accepted Medicaid. He recently experienced neck pain. He slept only a couple of hours each night. He could stand 15-20 minutes, sit 20 minutes, and walk from one-half to one block. He

could bend and could pick up to a half gallon of milk.  His memory was very confused, and he had problems with focus.  He had a car and driver's license but only drove when necessary.  He never traveled alone.  His daughter brought him food, took him out to eat, and brought him to his son's house.  He did not socialize with anyone else.  (R. 56-74.)

B.     **Medical Evidence.**

The medical evidence before the ALJ included:

- Treatment records from Dr. Javier Rivera Zayas (physiatry) for March 2012 to April 2014.  (R. 352-75, 401-11, 447-58, 460-93, 501); opinions from Dr. Cesar Padilla (psychiatry) dated February 2013.  (R. 414-41, 539-54); treatment records from Dr. Alan Plauka (internal medicine) for November to December 2013 (R. 504-510, 555-74); treatment records from Trinitas Hospital outpatient clinic (mental health counseling) for February 2014 to October 2015 (R. 575-624); treatment records from Advanced Rehabilitation (physical therapy) for September to October 2015 (R. 532-38).

- Medical imaging reports:  February 2012 thoracic and lumbar spine MRI (R. 376, 494); June 2013 EMG nerve conduction studies (R. 412-13, 445-46, 471-72); August 2013 cervical spine, lumbar spine, and left knee x-rays (R. 393); March 2014 bilateral hand x-rays (R. 531); February 6, 2016 cervical spine MRI (R. 628-29).

- Consultative physical examination report from Dr. Roberto H. Hau (general practice) dated August 2013.  (R. 384-93.)

- Consultative mental evaluation report from Dr. Jorge L. Suria (psychiatry) dated September 2013.  (R. 394-400.)

- Opinions from State Agency reviewing consultants Dr. Lourdes Marrero (general practice) and Dr. Deogracias Bustos (internal medicine), respectively dated September 2013 and March 2014, as to Plaintiff's physical impairments.  (R. 86-100, 110-125).

- Opinions from State Agency reviewing consultants Dr. Luis Umpierre and Dr. Ellen Gara (both psychologists), respectively dated September 2013 and March 2014, as to Plaintiff's mental impairment.  (R. 86-100, 110-125).

The Court discusses in Section V. below specific medical evidence relevant to the issues on appeal.

## V.      DISCUSSION

### A.      Local Civil Rule 9.1(e).

The Local Rules for this District require that a plaintiff's brief in a Social Security disability appeal include a separate "statement of facts with reference to the administrative record."  L. Civ. R. 9.1(e)(5)(C).  Plaintiff's forty-page brief contains a one-paragraph section entitled "Procedural History/Statement of Facts" that contains a brief procedural history of Plaintiff's administrative claim but no statement of facts whatsoever.  ECF No. 15 at 1-2; *see id*. at 3-40 (containing few, if any, record citations other than to the ALJ's decision).  Moreover, Plaintiff's brief fails to comply in other respects with Local Civil Rule 9.1(e)(5).  For example, there is no meaningful "statement of the issues presented for review."  L. Civ. R. 9.1(e)(5)(A); *see* ECF No. 15 at 2 (one-sentence section entitled "Issue" stating only that "[t]he primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence").  As another example, there is no argument "divided into sections separately treating each issue."  L. Civ. R. 9.1(e)(5)(D); *see* ECF No. 16 at 27-36 (challenging ALJ's Step Two finding, assessment of Plaintiff's subjective symptoms, and assessment of treating physician opinions in an argument section purportedly challenging the ALJ's RFC finding).  An additional failing is that counsel's arguments are routinely unnecessarily caustic.

Since May 4, 2018, the undersigned has decided twenty-two Social Security disability appeals in which the plaintiff was represented by Plaintiff's counsel in the present case.  The plaintiff's brief in each of those cases has had similar failings.  It is not the Court's burden to sift through Plaintiff's muddled arguments to determine the bases for appeal and then comb through the record searching for support.  Plaintiff's counsel, the law firm of Langton & Alter, Esqs., has been notified that any brief filed after May 13, 2019 that does not comply with Local Civil Rule

9.1(e) will be rejected, and any fees for re-briefing will not be credited when considering the reasonableness of fees for successful appeals. *See Little v. Berryhill*, No. 2:17-cv-11708 (PAZ), 2019 U.S. Dist. LEXIS 82127, at *44-46 (D.N.J. May 13, 2019). The Court reiterates such notification. The Court will consider the effect, if any, that Plaintiff's counsel's failure to comply with Local Civil Rule 9.1(e) (and the corresponding burden placed on the Court) should have on any award of fees in this case and will adjust those fees accordingly.

B.    **Step Three.**

At Step Three, the ALJ found:

Although the claimant has severe physical impairments, these do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of a listed impairment in the Listing of Impairments.

(R. 31.) The ALJ also found that "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04 [(Affective disorders)]" because Plaintiff failed to satisfy paragraphs B and C. (R. 31.)

Plaintiff's attack is twofold. First, as to his physical impairments, Plaintiff contends that the ALJ committed reversible error by failing to analyze the left knee meniscal tear and arthritis under "the Commissioner's listing designated for the consideration of joint disorders, paragraph 1.02" (ECF No. 15 at 10-11); failing to analyze the cervical spondylosis and degenerative disc disease under "the Commissioner's listing designed for the consideration of spinal disorders, paragraph 1.04" (*id*. at 11); and failing to explain why no combination of impairments medically

equaled the severity of any Listing.  Second, Plaintiff contends that the ALJ committed reversible

error in analyzing his mental impairment – major depression – under Listing 12.04.[8]

### 1.    Physical Impairments.

#### a)    *Individually.*

The Third Circuit instructs that the ALJ need not "use particular language or adhere to a

particular format in conducting analysis" so long as "the ALJ's decision, read as a whole, illustrates

that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not

meet the requirements for any [L]isting."  *Jones*, 364 F.3d at 505 ("the function of *Burnett* is to

ensure that there is sufficient development of the record and explanation of findings to permit

meaningful review"); *see Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) (ALJ

need not mention any specific Listing to make judicially reviewable finding); *Lopez v. Comm'r of

Soc. Sec.*, 270 F. App'x 119, 121-22 (3d Cir. 2008) ("An ALJ's failure to discuss specific Listing

is not a reversible error if [s/]he analyzed all the probative evidence and explained [her/]his

decision sufficiently to permit meaningful judicial review."); *Cosby v. Comm'r of Soc. Sec.*, 231

F. App'x 140, 146-47 (3d Cir. 2007) (ALJ's "fail[ure] to identify the listing that came closest to

matching [claimant's] impairments" was not reversible error where ALJ "clearly evaluated the

medical evidence") (all citing *Jones*).  Thus, the Court must determine whether the evidentiary

discussion – regardless of its placement in the ALJ's decision – supports a finding of not disabled

at Step Three – regardless of whether the ALJ's decision even cites to a Listing – pursuant to the

applicable legal standards.  Plaintiff argues that "[t]here is literally nothing to which this Court to

---

[8] The Court analyzes all Listing criteria, as did the ALJ, in effect on April 14, 2016 (decision date).  The applicable criteria are described in Social Security Administration Program Operations Manual System ("POMS") DI 34121.011, *Musculoskeletal Listings from 06/16/2008 to 09/28/2016*, available at http://policy.ssa.gov/poms.nsf/lnx/0434121011; and POMS DI 34132.009, *Mental Listings from 12/18/07 to 9/28/16*, available at http://policy.ssa.gov/poms.nsf/lnx/0434132009.

[sic] its judicial review authority.  Nor does the body of the decision following step 3 provide any clue whatsoever as to the ALJ's step 3 thinking."  ECF No. 15 at 18.  The Court disagrees and finds that the Step Four section of the ALJ's decision sufficiently analyzed Plaintiff's individual physical impairments – i.e., left knee meniscal tear,  arthritis, cervical spondylosis, and degenerative disc disease – to support a finding of not disabled under Listings 1.02 and 1.04.

> Listing 1.02 provides:
>
> Major dysfunction of a joint(s) (due to any cause):  Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B.    Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00 B2c.

POMS DI 34121.011.  Under Listing 1.00 B2b, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  *Id*.[9]  Neither the ALJ's decision nor Plaintiff's brief points to any imaging findings of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).[10]  *Id*.  Moreover,

---

[9] Listing 1.00J requires an examination of the claimant's ability to ambulate without the assistive device(s) in place.  *See* POMS DI 34121.011.

[10] The ALJ's decision cited the operative report for Plaintiff's October 2007 arthroscopic knee surgery in which he underwent a partial medial meniscectomy to repair a tear in Plaintiff's medial meniscus and a chondroplasty to treat grade III chondromalacia.  (R. 33 (citing R. 520-22).)  Contrary to Plaintiff's assertion, there is no imaging evidence in the record – let alone "persistence evidence" (ECF No. 15 at 12 & n.12) – of any subsequent tear or chondromalacia.  (*See* R. 33 (noting that "[t]his surgery was successful

neither the ALJ's decision nor Plaintiff's brief points to any evidence that Plaintiff can ambulate only with the use of a handheld assistive device that limits the functioning of both his lower (paragraph A) or upper extremities (paragraph B).

> Listing 1.04 provides:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00 B2b.

POMS DI 34121.011.  Neither the ALJ's decision nor Plaintiff's brief points to any evidence that meets the criteria of paragraphs A, B, or C.[11]  As to paragraph A, the treatment records summarized by the ALJ for the period after the alleged onset date reflect only that Plaintiff experienced

---

and the claimant tolerated it well").)  The ALJ's decision also cited Plaintiff's March 2014 bilateral hand x-rays, which showed only mild degenerative changes.  (R. 34 (citing R. 531).)

[11] The Court assumes solely for purposes of this opinion that Plaintiff meets the threshold requirement of Listing 1.04 because he has a disorder of the spine resulting in compromise of a nerve root or the spinal cord.  As discussed in Section V.B.1. below, the imaging results on which Plaintiff relies precede the alleged onset date by five years.

radiating pain and limited range of motion.  Plaintiff cites no evidence of the requisite muscle weakness, reflex or sensory loss, or (as to Plaintiff's back pain) positive straight leg raise testing. (R. 33-34.)  As to paragraph B, there is no clinical or symptomatic evidence of spinal arachnoiditis. As to paragraph C, as explained above, Plaintiff can ambulate effectively.

Having identified no relevant evidence that was overlooked by the ALJ or Plaintiff, the Court finds that substantial evidence supports the ALJ's Step Three finding that Plaintiff did not meet Listings 1.02 and 1.04 for any of his individual physical impairments.  Alternatively, the Court finds that any error as to the two Listings was harmless.  *See Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162 (3d Cir. 2008) (affirming Step Three finding where claimant "provides us with no citations to any record evidence demonstrating that her impairments are of Listing-level severity"); *Domkos v. Colvin*, No. 15-cv-2660 (JLL), 2016 WL 1732380, at *3 (D.N.J. May 2, 2016) (remand not warranted when claimant failed to cite evidence that Listing was met because "[i]t is not enough to simply call foul and punt to this Court for research and analysis.").

### b)     Combined.

Plaintiff next argues that the ALJ's decision was flawed because it did not sufficiently explain why no combination of Plaintiff's physical impairments medically equaled the severity of any Listing.  The Court agrees.  Although the ALJ's decision included a detailed evidentiary discussion, the Court cannot meaningfully review the Step Three finding regarding Plaintiff's combined impairments without any explanation of the ALJ's reasoning.  Nevertheless, remand is warranted only if the ALJ's error was not harmless.  Plaintiff bears the burden of explaining how the ALJ's decision would change absent the ALJ's error.  *See Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (plaintiff must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to [her/]his claims," including "affirmatively point[ing]

to specific evidence that demonstrates [s/]he should succeed"); *Gullace v. Comm'r of Soc. Sec.*, No. 15-cv-7630 (FLW), 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) (same) (citing *Woodson*). Plaintiff does not explain why any combination of his physical impairments is medically equivalent to any specific Listing, including Listing 1.02 and 1.04.  *See* ECF No. 15 at 12 ("But how is plaintiff to make a medical equivalence argument, encouraging the Court to find presumptive disability when it is patently obvious that the ALJ neglected, avoided or forgot to offer her own analysis?").  The Court therefore finds that any error in the ALJ's Step Three finding as to Plaintiff's combined impairments was harmless.  *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (affirming Step Three finding where claimant complained "in vague terms that certain impairments were not properly compared, separately and in combination, to the listings" without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not");  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007) (affirming Step Three finding where claimant did not "point to any medical evidence ignored by the ALJ that would indicate that [claimant's] impairments are equivalent to one of the Listings the ALJ identified"); *Cosby*, 231 F. App'x at 146 (affirming Step Three finding where Plaintiff "does not point to any medical evidence ignored by the ALJ that would show that [claimant's] impairments medically equaled one of the listings").

### 2.    Mental Impairment.

The ALJ also found that "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04 [(Affective disorders)]."  (R. 31.)  Listing 12.04 is met when the criteria of *both* paragraphs A and B are satisfied, *or* when the criteria of *only* paragraph C are satisfied.  POMS DI 34132.009.  Plaintiff contends that the ALJ's decision is flawed because it failed to satisfy paragraphs B and C.  (R. 31.)  Plaintiff contends that the ALJ

committed reversible error by failing to consider paragraph A and by erroneously analyzing paragraphs B and C.

### a) *Paragraph A.*

Plaintiff faults the ALJ's decision for "ignor[ing] the A criteria."  ECF No. 15 at 13; *see id.* at 19 ("The A criteria of 12.04 is not mentioned.").  The Court observes that it was not necessary for the ALJ to analyze paragraph A after concluding that Plaintiff did not satisfy paragraph B or C.  *See Holloman*, 639 F. App'x at 813-14; *Nunez v. Comm'r of Soc. Sec.*, No. 2:14-cv-4664 (KM), 2015 WL 4770991, at *4 (D.N.J. Aug. 12, 2015).  The Court therefore finds no error in the ALJ's Step Three finding as to the paragraph A criteria.[12]

### b) *Paragraph B.*

The ALJ correctly explained:

> To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following:  marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

(R. 31.)  The ALJ found that the severity of Plaintiff's depression "does not meet or medically equal the criteria of listing 12.04" because:

> In activities of daily living, the claimant has moderate restriction.  In the Function Report, the claimant stated that he lives alone and takes care of his hygiene and grooming, prepares simple meals, does the household chores, and watches television.  His daughter comes three times per week, cooks full meals, and does detailed cleaning.
>
> In social functioning, the claimant has mild difficulties.  In the same Function Report, the claimant stated that he cares for his minor son, picks him [up] from

---

[12] As discussed below, the case must be remanded for a new paragraph B finding.  The ALJ must consider paragraph A on remand if the paragraph B criteria are satisfied.

school, drives, goes to shop [for] groceries and to his medical appointments, and visits [with] his two adult children.

With regard to concentration, persistence or pace, the claimant has moderate difficulties.  The evidence of record supports this assessment.  There were no hospitalizations.  The claimant had adequate thought processes, and there was no evidence of intellectual or personality deteriorations, nor perceptual disturbances or delusions.  During different interviews and evaluations, the claimant gave adequate and detailed descriptions of his symptomology and work history.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation which have been of extended duration.  The claimant has been depressed and anxious, but there were no hospitalizations or emergency room visits due to his condition.  All his mental treatment has been on an ambulatory basis.

(R. 31.)  Plaintiff contends that substantial evidence does not support this finding because the ALJ ignored parts of Plaintiff's  Function Report and erred in assessing the medical opinions from Drs. Padilla, Suria, and Umpierre.  The Court disagrees.

First, Plaintiff argues that the ALJ's decision provided a:

thoroughly incomplete rendition of plaintiff's "Function Report," a report which actually says that plaintiff puts off showering for days, has a hard time with socks and shoes, and needs help for all household chores, including "real cleaning and the laundry"  because he is unable to stand, bend or reach.  His "simple meals"  are "cereal, soup, sandwiches" (Tr. 337).  He has no hobbies other than watching TV and speaking with his son who visits every day and his daughter who visits three times per week (Tr. 339).

ECF No. 15 at 19.  In fact, Plaintiff reported that he "*sometimes* [] put off showering for a *few* days" and that his *only* difficulty with personal care activities was with socks and shoes.  (R. 336-27 (emphases added); *see* R. 36 (ascribing great weight to Dr. Hau's opinion that Plaintiff could tend to his own personal hygiene, because the opinion was "supported by the evidence of record") (citing R. 388).)  The Court finds that, when compared to the evidence cited in the ALJ's decision, Plaintiff's inabilities to prepare elaborate meals and to undertake more extensive housecleaning than cleaning up after himself is not substantial evidence of a marked limitation as to activities of daily living.  As to social functioning, the ALJ explained that Plaintiff picks up his son from school

every day, can interact with others while shopping for groceries and receiving medical care, and enjoys close relationships with his children.  The Court finds that, even if the ALJ had erred by not finding a *moderate* limitation in this category, such error was harmless because the Court cannot conclude that substantial evidence supports a finding of a *marked* limitation.

Second, Plaintiff argues that the ALJ ignored Dr. Suria's opinion that:

> [P]laintiff – even in Spanish – could not successfully subtract 3 digits from 91, or from 89, or from 87.  In answer to the standard question and what plaintiff might do upon finding a stamped and address envelope in the street, plaintiff wouldn't put it in a mailbox (indicating using his own judgment) rather, he would give it to his sister (indicating dependence) – ("se la doi a mi hermana" – Tr. 398).

ECF No. 15 at 20.  The ALJ ascribed great weight to Dr. Suria's opinion that Plaintiff had "normal insight, adequate memory, attention, concentration, and judgment."  (R. 35-36.)  Dr. Suria specifically reported that Plaintiff was able to recall information for both remote and recent events; was able to recall three objects both immediately and after five minutes; was able to focus his attention on the evaluation questions; was able to spell MUNDO forwards and backwards; responded to serial 3 testing with "97, 94, 91, 89, 87, 85;" and had adequate judgment based on his response to questioning about a found stamped, addressed, letter.  (R. 398.)  The ALJ also ascribed great weight to Dr. Suria's assessment of a GAF of 55 because it is "supported by the evidence of record."  (R. 36 (noting that GAF of 55 is consistent with moderate limitations in functioning with adequate memory, attention, concentration, and judgment).)  Plaintiff's counsel is not a medical professional, and his analysis of Plaintiff's responses when questioned by Dr. Suria has no evidentiary value.  The Court finds that, when compared to the evidence cited in the ALJ's decision, Plaintiff's inability to complete serial 3 testing correctly is not substantial evidence of a marked limitation as to concentration, persistence, and pace.

Third, Plaintiff argues that the ALJ ascribed too little weight to the opinions of the State

Agency reviewing consultants:

> Most disturbingly, the B criteria analysis does not recite the opinion of the Commissioner's own file-review psychiatrist, Dr. Luis Umpierre, who found plaintiff to suffer *marked restrictions* in activities of daily living, *marked difficulties* in maintaining social functioning, *marked difficulties* in maintaining concentration, persistence and pace and *four or more episodes* of decompensation for extended duration (Tr. 438-43).    This opinion, by the Commissioner's own review psychologists, is rejected but never mentioned in the decision.    Indeed, these findings are scrupulously avoided in the step 3 analysis…. (Tr. 36).

ECF No. 15 at 20-21 (emphases in original).  Plaintiff is mistaken.  Drs. Umpierre and Gara opined

that Plaintiff has *moderate limitations* in all three functional categories and *no episodes* of

decompensation.  (R. 92, 117.)  The ALJ ascribed partial weight to these opinions because the ALJ

found that the evidence reflected that Plaintiff has only *mild* difficulties in maintaining social

functioning.  (R. 36.)  Furthermore, the Court finds that any error by the ALJ at Step Three in not

adopting the State Agency reviewing consultants' opinions as to this functional category was

harmless, because the reviewing consultants concluded that Plaintiff did not meet any of the

paragraph B criteria.

Plaintiff appears to have confused the State Agency reviewing consultants with Dr. Padillo,

who began treating Plaintiff in March 2012 – nearly one year *after* the alleged onset date.  Dr.

Padillo completed the following form documents dated February 20, 2013:  Psychiatric Medical

Report (R. 414-17, 543-46 (Spanish original); R. 439-42 (English translation)); Mental Impairment

Questionnaire (R. 419-21, 551-54 (Spanish original); R. 547-50 (English translation); Mental

Residual Functional Capacity Assessment (R. 422-24 (Spanish original)); Mental Assessment of

Ability to do Work-Related Activities (Mental) (R. 426-27 (Spanish original)); and Psychiatric

Review Technique (R. 428-39 (Spanish original)).  The ALJ ascribed little weight to Dr. Padilla's

opinion that Plaintiff "has marked limitations in all aspects of mental functioning" because Dr.

Padilla "did not provide treatment notes to support his assessment," the opinion is "inconsistent with the evidence of record as a whole, and [Plaintiff's] daily activities do not support such a diminished functional capacity." (R. 36.) Plaintiff's brief asserts that Dr. Padilla "*did* provide those treatment notes (Tr. 554-624), the decision merely pretends that they aren't there." ECF No. 15 at 13 (emphasis in original). But the records cited by Plaintiff are not from Dr. Padilla. Instead, they are treatment notes from Dr. Plauka and from Trinitas Hospital outpatient mental health clinic. Twenty pages later, Plaintiff's brief again asserts that "Dr. Padilla *did* submit notes and lengthy explanations as the basis for his opinion (Tr. 414-441)[.]" ECF No. 15 at 33 (emphasis added). Although the records cited this time by Plaintiff are from Dr. Padilla, they are not treatment notes. Instead, they are the Spanish versions of the five forms completed by Dr. Padilla without supporting medical evidence. The Court finds no error in the ALJ's assessment of Dr. Padilla's opinion or in the ALJ's finding that Plaintiff has a moderate limitation as to concentration, persistence, and pace. Plaintiff's Function Report and hearing testimony – together with Dr. Suria's report, the State Agency reviewing consultants' opinions, and Trinitas Hospital treatment records reflecting that Plaintiff "was motivated, responsive to treatment, and admitted improvement" (R. 35) – are not substantial evidence of a marked limitation as to this functional category.

The Court therefore finds that substantial evidence supports the ALJ's Step Three finding as to the paragraph B criteria and, alternatively, that any error is harmless.

### c)    *Paragraph C.*

Paragraph C of Listing 12.04 requires:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.      Repeated episodes of decompensation, each of extended duration; or

2.      A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.      Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

POMS DI 34132.009.  The ALJ found that "the evidence fails to establish the presence of the 'paragraph C' criteria."  (R. 31.)  As discussed above, there is no evidence in the record that Plaintiff had repeated episodes of decompensation, each of extended duration.  Plaintiff does not cite, nor can the Court identify, relevant evidence overlooked by the ALJ.  The Court therefore finds that substantial evidence supports the ALJ's Step Three finding as to the paragraph C criteria and, alternatively, that any error is harmless.

## C.      **Step Four.**

At Step Four, the ALJ found:

[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), with occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling.  In addition, the claimant is limited to the performance [of] simple and routine tasks, with only occasional contact with co-workers, supervisors, and public, and no direct customer service with public.

(R. 32.)  Plaintiff contends that the RFC finding is not supported by substantial evidence because it lacks evidentiary support and does not reflect all credibly established physical and mental limitations.  The Court disagrees.

### 1.      **Physical Impairments.**

Plaintiff's critique of the RFC finding as to his physical impairments heavily relies on the ALJ's description of a lumbar spine MRI that revealed "two level lumbar disc disease 'impinging

on the anterior aspect of the spinal canal and neural foramina bilaterally, and subligamentous posterior disc herniation at the L5-S1 level with impingement on the anterior aspect of the spinal canal and abutting the nerve root bilaterally' (and necessitating, 7 years after onset) 'percutaneous discectomy with decompression at the L5-S1 level.'"  ECF No. 15 at 24 (citing R. 33); *see id.* at 25 (citing same).  Plaintiff also relies on the ALJ's description of a cervical spine MRI that revealed "'subligamentous posterior disc herniation at the C5-C6 level, impinging on the anterior aspect of the spinal canal' and 'cervical osteopenia and loss of intervertebral disc space at the C5-C6 level.'" ECF No. at 15 at 24-25 (citing R. 33).  Plaintiff omits that these MRIs were performed in October 2005 – five-and-a-half years *before* the alleged onset date – and that the associated surgical procedure was performed in April 2007 – four years *before* the alleged onset date.

There is no medical evidence in the record relating to Plaintiff's physical impairments after April 2007 until February 2012, when a lumbar spine MRI revealed a small broad base disc protrusion at L5-S1 and circumferential bulging of osteophytes from endplates noted at L1-2.  (R. 376.)  The ALJ explained that Plaintiff continued to complain about and pursue conservative treatment for back pain in 2012, 2013, and 2014.  (R. 33-34.)  In August 2013, Dr. Hau reported that Plaintiff's consultative examination was unremarkable except for pain on shoulders and pain signs at palpation on the back mid and low paravertebral muscles.  Dr. Hau also reported that Plaintiff "had a full range of motion" and "tended to exaggerate limitation of movements on flexion."  (R. 34, 387.)  Spinal x-rays ordered by Dr. Hau revealed no abnormalities except for cervical osteopenia and loss of intervertebral disc space at the C5-C6 level.  (R. 34, 393.)  There is no medical evidence in the record relating to Plaintiff's physical impairments after April 2014 until February 2016, when a cervical spine MRI revealed:  at C2-3, C7-T1, and T1-T2, no significant central canal or neural foraminal narrowing; at C3-4, minimal central canal but no

28

significant neural foraminal narrowing; at C4-5, some significant central canal or neural foraminal narrowing; at C5-6, mild central canal narrowing and moderate bilateral neural foraminal narrowing; and at C6-7, minimal left and mild to moderate right neural foraminal narrowing.  (R. 34, 628.)

The ALJ found that Plaintiff's subjective pain complaints were sufficiently supported by the 2016 MRI results to limit him to sedentary work with additional postural limitations.  In so finding, the ALJ rejected the unanimous opinions of the State Agency reviewing consultants that Plaintiff could perform light work.  (R. 93-94.)  Plaintiff points to no evidence that would support a more restrictive RFC.  The Court therefore finds that substantial evidence supported the ALJ's RFC finding as to limitations attributable to Plaintiff's physical impairments.  The Court further finds that substantial evidence supported the ALJ's assessment of Plaintiff's subjective symptoms. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) ("ALJ affords due weight to a claimant's subjective complaints when he limits her to work at a significantly lower level than previously performed."); *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) (where ALJ accepted claimant's subjective complaints as "precluding any work above a sedentary level ... the ALJ gave [claimant's] complaints essentially conclusive effect.").

### 2.    Mental Impairment.

Plaintiff next argues that the RFC finding failed to include all credibly established limitations attributable to his mental impairment because the ALJ ascribed little weight to Dr. Padilla's opinions.  The Court disagrees.

When evaluating medical evidence, an ALJ must give controlling weight to, and adopt the medical opinion of, a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] case record." 20 C.F.R. § 404.1527(c)(2). "[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Moreover, the treating physician rule applies only to opinions that reflect judgments about the nature and severity of a claimant's impairment, including the claimant's symptoms, diagnosis and prognosis, what s/he can still do despite impairment, and his/her physical or mental restrictions. 20 C.F.R. § 404.1527(a). A treating physician "opinion" that the claimant is disabled and unable to work can never be given controlling weight, because that is an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(d).

As explained above in Section V.A.2.b., Dr. Padilla did not provide any treatment notes or other medical evidence to support the opinions that he expressed via checkboxes on multiple pre-printed forms. Dr. Padilla's conclusory opinion that Plaintiff's mental impairment precluded even sedentary, unskilled work was not supported by other record evidence. As also explained above, Dr. Suria opined that Plaintiff had moderate limitations in functioning with adequate memory, attention, concentration, and judgment. The State Agency reviewing consultants opined that Plaintiff was "still capable of understanding, retaining and comprehending simple basic work related directives of a simple level" and "retained sufficient concentration to endure the course of a normal workday/workweek with the benefit of customary tolerances. His depressive symptoms may diminish[] productivity and performance to some extent, therefore he is best suited to simple tasks which are not time constrain[ed] or time sensitive in nature." (R. 95-96, 121.) The RFC finding is consistent with these limitations, and Plaintiff points to no evidence that would support

a more restrictive RFC.  The Court therefore finds that substantial evidence supported the ALJ's

RFC finding as to limitations attributable to Plaintiff's mental impairment.

      **D.**    **Step Five.**

      Finally, Plaintiff contends that "the testimony of the VE cannot serve as the basis for the

Commissioner to overcome her step 5 burden since that testimony is based on an RFC which does

not include all of plaintiff's proven limitations nor all the limitations acknowledged by the ALJ in

the body of her decision."  ECF No. 15 at 40.  Specifically, Plaintiff argues:

> It cannot be ignored that here that the ALJ's vague construction limiting the
> plaintiff to "simple and routine" or "occasional contact" does not come close to
> adequately convey "moderate difficulty in maintaining daily activities" or other
> "moderate difficulties" in concentration, persistence, keeping pace, keeping a
> schedule, etc.  Here, just as in *Ramirez*, the VE's answers to the ALJ's questions
> may surely have been different had the actual, specific limitations, uncontradicted
> in the record, been conveyed verbatim as part of the ALJ's hypothetical.

ECF No. 15 at 39 (citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004)).  Plaintiff's reliance

on *Ramirez* is misplaced.

      Mental limitation findings at Step Three assess whether the claimant is disabled because

s/he met or equaled any Listing.  The Third Circuit held in *Ramirez* that, although such findings

"are not an RFC assessment and that step four requires a more detailed assessment, it does not

follow that the findings [at Step Three] play no role in steps four and five, and SSR 96-8p, contains

no such prohibition."  372 F.3d at 555 (citing Social Security Ruling 96-8p, *Policy Interpretation

Ruling Titles II & XVI: Assessing Residual Functional Capacity In Initial Claims*, 1996 WL

374184 (S.S.A. Jul. 2, 1996)).  The Third Circuit further held that a VE hypothetical restricting a

claimant to work involving "simple one to two step tasks" did not adequately convey in that case

the ALJ's finding at Step Three that the claimant "often" suffered from "deficiencies of

concentration, persistence, or pace."  *Ramirez*, 372 F.3d at 551, 554.  When *Ramirez* was decided,

the applicable regulation required the ALJ to rate the claimant at Step Three on a five-point scale of never, seldom, often, frequent, and constant.  *Id*.  However, the applicable regulation changed after *Ramirez* was decided and now requires a rating on a five-point scale of none, mild, moderate, marked, and extreme.  Like most courts in this District that have considered the issue, the Court is persuaded that the change in regulatory framework distinguishes *Ramirez*.[13]

Moreover, unlike the RFC finding at issue in *Ramirez*, the ALJ's RFC finding adequately conveyed Plaintiff's limitations as to both daily living activities (in that Plaintiff was limited to sedentary work with postural restrictions) and concentration, persistence, and pace (in that Plaintiff was limited to simple and routine tasks, with only occasional contact with co-workers, supervisors, and public, and no direct customer service with public).  As explained above, the record did not support additional limitations.  The Court therefore finds that the hypothetical questions posed to the VE were supported by substantial evidence.[14]

---

[13] *See*, *e.g.*, *Pimental v. Colvin*, No. 15-cv-2662 (JLL), 2016 WL 3456919, at *12 (D.N.J. June 21, 2016) (restriction to "simple, routine tasks adequately accounts for moderate limitations in concentration, persistence, or pace"); *Thompson v. Comm'r of Soc. Sec.*, No. 15-cv-2031 (RBK), 2016 WL 2978610, at *5 (D.N.J. May 23, 2016) (restriction to "simple, routine tasks with simple instructions" adequately accounted for "moderate difficulties with concentration, persistence or pace"); *Pidgeon v. Colvin*, No. 15-cv-2897 (JBS), 2016 WL 2647666, at *13 (D.N.J. May 9, 2016) (restriction to "routine and repetitive tasks" adequately accounted for moderate difficulties with concentration, persistence, or pace); *Domkos v. Colvin*, No. 15-cv-2660 (JLL), 2016 WL 1732380, at *9 (D.N.J. May 2, 2016) (restriction to "simple routine tasks" adequately accounted for moderate difficulties in concentration, persistence or pace) (all citing *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) (restriction to "simple, routine tasks" adequately accounted for moderate difficulties with concentration, persistence and pace)).  *But see Boyle v. Colvin*, No. 12-cv-4724 (FLW), 2014 WL 3556507 (D.N.J. Jul. 18, 2014) (applying *Ramirez* to revised regulatory framework because *McDonald* is an unpublished decision).

[14] To the extent Plaintiff argues that any other credibly established limitations were excluded from the ALJ's hypothetical questions, Plaintiff is merely restating his contention that the ALJ's RFC finding was flawed. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005).  Since the Court already found that the RFC finding is supported by substantial evidence, no further review is required.

## V.    CONCLUSION

For these reasons, the Court affirms the Commissioner's decision that Plaintiff was not disabled as set forth in the accompanying Order.


Dated:    May 29, 2019                          _____s/ Paul A. Zoss_____
At Newark, New Jersey                          PAUL A. ZOSS, U.S.M.J.